AMERICAN HARDWARE MUTUAL INSURANCE CO., Appellant,

v.

DARV'S MOTOR SPORTS, INC., et al., Economy Fire & Casualty Co., Thomas Boran, Respondents.

ECONOMY FIRE & CASUALTY CO., Respondent,

v.

Darvin SEMBAUER, et al., Thomas Boran, Respondents,

American Hardware Mutual Insurance Company, Appellant.

No. C4-88-455.

Court of Appeals of Minnesota.

Aug. 16, 1988.

Review Denied Oct. 19, 1988.

Mark L. Scholle, Scholle & Scholle, Ltd., Minneapolis, for American Hardware Mut. Ins. Co.

Mark L. Pfister, Minneapolis, for Darv's Motor Sports, Inc., et al.

Jeffrey A. Hanson, Dunlap, Keith, Finseth, Berndt & Sandberg, Rochester, for Economy Fire & Cas. Co.

George W. Kuehner, Jardine, Logan & O'Brien, St. Paul, James P. Larkin, Larkin, Hoffman, Daly & Lindgren, Minneapolis, for Thomas Boran.

James R. Carlson, Muir, Heuel & Carlson, Rochester, for Darvin Sembauer, et al.

Heard, considered and decided by FORSBERG, P.J., and LANSING and SCHULTZ*, JJ.

## OPINION

LANSING, Judge.

Jill Sembauer, age five, and Thomas Boran, age 26, were both injured when the motorized dirt bikes they were driving collided. The collision occurred on a driveway next to the Sembauer home. Darv's Motor Sports, Inc. (DMS), a corporation wholly owned and operated by Jill's parents, Darvin and Kathleen Sembauer, is located on the other side of the Sembauer home. DMS sells and repairs motorcycles. The Sembauers taught Jill how to ride a Yamaha Y–Zinger, owned by DMS, as part of their promotion for DMS sales. She was riding it that day to visit a friend who lived nearby. Boran, employed by DMS as a mechanic, was test-driving a Kawasaki motorcycle under repair.

Boran applied for and received workers' compensation benefits. He also brought a negligence action against DMS, Jill, and Sembauers, as Jill's parents. DMS successfully moved for dismissal of Boran's action against it based on the exclusive remedy provision of the Workers' Compensation Act. Boran's action against Jill and Sembauers is pending.

Jill's guardian-ad-litem brought a negligence action on Jill's behalf against Boran and DMS. Boran and DMS served a third party complaint against Sembauers, alleging that they negligently entrusted the motorcycle to Jill and were liable for indemnity or contribution. Jill's claims against Boran and DMS have been settled, but the third party action is still pending.

Two insurers are involved in the present declaratory judgment action. DMS is insured by American Hardware Mutual (American) under a garage policy with coverage limits of $500,000. Sembauers have a homeowner's insurance policy from Econ-omy Fire & Casualty Co. (Economy) with coverage limits of $50,000. Both insurers brought declaratory judgment actions to determine coverage and the actions were consolidated. The trial court continued Boran's suit and the third party action until resolution of the insurer's declaratory judgment actions. The parties submitted the coverage and priority issues to the court based on the files, policies and deposition transcripts.

The court found that the American policy and Economy policy each provided for coverage and defense of Jill in the Boran suit and also for coverage and defense of Sembauers in both the Boran suit and the third party action. The court determined that American's coverage was primary and required American to pay Sembauers' and Jill's attorneys fees in the declaratory judgment action.

American appeals the determinations of priority, coverage and defense of Sembauers in both actions. Economy filed a notice of review on the determination of coverage and defense for Jill in Boran's action and for Sembauers in both actions.

## ISSUES

1. Did the trial court err in finding that the garage operations policy provided coverage for business owners' alleged negligence in entrusting the businesses' motorized dirt bike to a 5–year–old?

2. Did the trial court err in finding concurrent coverage under a homeowner's policy issued to the business owners?

3. Did the trial court err in finding the garage operations coverage primary to the homeowner's coverage?

4. Did the trial court err in awarding attorney's fees against the garage operations insurer in the declaratory judgment action?

## ANALYSIS

### I

American's garage policy, issued to DMS, provided that anyone using a covered

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

auto with DMS's permission was an "insured" under the policy. The Y–Zinger was an "auto" as defined by the policy, and Jill was using the Y–Zinger with DMS's permission. The trial court found that Jill was an "insured" within the definition of American's policy, and American has not appealed that determination.

■ American does dispute, however, that its policy provides coverage for Sembauers in the Boran suit or the third-party negligent entrustment claim. The liability coverage provides that American will defend suits and pay all sums the insured legally must pay because of bodily injury covered by an accident and resulting from garage operations. The policy is issued to DMS and Sembauers are not named insureds. However, as employees and shareholders of DMS they may qualify as "an insured" under two aspects of the liability coverage.

First, in claims involving covered autos, an "insured" includes anyone using a covered auto (Jill) and anyone liable for the conduct of an insured to the extent of that liability. American Policy IV, D, 1(c). Second, for garage operations other than covered autos, the provision includes an insured's employees, directors or shareholders acting within the scope of their duties. American Policy IV, D, 2(b). This language is sufficiently broad to include Sembauers as insureds if the accident resulted from garage operations. The scope of "garage operations" is defined by the policy to include:

the ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. Garage operations includes the ownership, maintenance or use of the autos * * * as covered autos. Garage operations also include all operations necessary or incidental to a garage business.

American Policy, I. F.

The trial court held that Jill's operation of the Y–Zinger was incidental to DMS's garage business:

There can be no doubt Jill Sembauer's activities, on this day, fell within the broad Garage Operations definition. Garage operations include *all* operations necessary or incidental to the garage business. One important activity which is necessary and incidental to Darv's Motor Sports Inc. was the promotion and sale of its products. One of these products was the Y–Zinger. The Y–Zinger was designed to be driven by younger children.

Darv's demonstrated to potential customers that a young child is capable of riding the Y–Zinger. And for that purpose, Jill Sembauer was trained in its use and proficiency. She fit the business needs of Darv's Motor Sports. Jill was given expressed authorization to practice driving the Y–Zinger * * * even though she may be using the vehicle for personal or social purposes. It certainly is reasonable, under circumstances of this case, that the more Jill drove the motorbike, for whatever reason, the more proficient she would become in its operation and handling characteristics. In fact, it certainly inures to Darv's benefit to have Jill ride the bike as much as practically possible to become extremely proficient in its operation to show potential customers how skillful she was in handling the bike to demonstrate its versatility and ease of handling. The more proficient she was in showing potential customers its versatility and ease of handling, the greater sales potential for the bike.

■ We find no clear error in the court's determination on this issue. Although Jill was on her way to visit a friend when the accident occurred, the record supports that the Y–Zinger, owned by DMS and offered for sale by DMS, was driven for promotional purposes, that Jill was encouraged to ride the Y–Zinger for promotional purposes, and that her use of the bike on that day was incidental to garage operations.

■ The exclusions advanced by American to deny coverage are not persuasive. It is unclear which of these arguments were presented to the trial court. In any event the exclusions are inapplicable. Sembauers, directors and shareholders of DMS, are not excluded under a "fellow employ-

ee" provision which apparently relates to worker's compensation coverage.

## II

Under the Economy homeowner's policy, both Sembauers are named insureds and Jill is an additional insured. The policy covers damages for which an insured is legally liable.

■■■ Although the policy excludes coverage for accidents involving a motor vehicle owned by an insured, the Y–Zinger was owned by DMS (not an insured under the homeowner's policy) and, therefore, was not within the policy's exclusion for use of an insured's vehicle. The clause which excludes coverage for bodily injury "arising out of the business pursuits of any insured" does not apply to "activities which are ordinarily incident to non-business pursuits." Giving Jill permission to ride to a friend's house to play was an activity which would ordinarily be incident to non-business pursuits.

The trial court correctly found that the Economy Fire policy provided coverage for Sembauers and Jill in both Boran's action and the third-party action.

## III

■ When two policies afford coverage for the same incident, primary coverage is afforded by the policy which specifically provides such coverage, or by the policy which is deemed by the court to be "closer to the risk." *Auto Owners Insurance Co. v. Northstar Mutual Insurance Co.*, 281 N.W.2d 700, 703–04 (Minn.1979).

■ Three factors considered in the "closer to the risk" analysis are: 1) Which policy specifically described the accident-causing instrumentality? 2) Which premium is reflective of the greater contemplated exposure? and 3) Does one policy insure the vehicle and anticipate the risk of its use more than the other policy? *See Federal Insurance Co. v. Prestemon*, 278 Minn. 218, 229–30, 153 N.W.2d 429, 436–37 (1967).

■ In this case, the garage policy covered the vehicles owned by DMS, one of which was the Y–Zinger, and also covered the use of those vehicles. The homeowners

policy, although it provided coverage for injury from non-owned vehicles, in another section specifically excluded coverage for motor vehicles. Although the garage policy did not list the serial number of the vehicles it covered, it arguably came closer to describing the Y–Zinger than did the homeowners' policy.

Moreover, the American policy reflected greater exposure, with liability insurance on owned autos costing $629 for $300,000 coverage. The Economy policy carried a total premium of $171, with $50,000 personal liability coverage per occurrence.

Finally, the garage policy was obtained to cover the risks involved in owning, maintaining and using the DMS inventory. By contrast, the major purpose of a homeowners' policy is to cover damage to the home and liability for incidents which occur on the premises. The trial court did not clearly err in determining that American provided primary coverage and Economy provided excess coverage.

## IV

■ Minn.Stat. § 555.08 (1986) provides that further relief based on a declaratory judgment may be given by the court when necessary or proper. *See also Lanoue v. Fireman's Fund American Insurance Cos.*, 278 N.W.2d 49, 54–55 (Minn.1979) (award of attorney's fees). If an insurance contract is intended to provide a defense for the insured, the insured should not bear the financial burden of forcing the insurer to defend. *Id.* (citing *Morrison v. Swenson*, 274 Minn. 127, 142 N.W.2d 640 (1966)).

■ American's policy states that American has a right and a duty to defend its insured in claims covered by the policy. Because of that duty, the trial court did not err in assessing the cost of Sembauers' defense to American as the primary insurer.

## DECISION

Affirmed.