Michael J. HENRY, Julia A. Henry, Christopher A. Henry, DOB: 12–24–81 and Joseph R. Henry, DOB: 5–03–83, by their Guardian ad Litem, D.J. Weis, Plaintiffs-Respondents,

WISCONSIN PHYSICIANS SERVICES INS. CORP., Security Health Plan of Wisconsin, Inc. and Travelers Property and Casualty, Nominal-Plaintiffs,

v.

GENERAL CASUALTY COMPANY OF WISCONSIN, Defendant,

UNIVERSAL UNDERWRITERS INSURANCE COMPANY, Defendant-Appellant.†

Court of Appeals

*No. 98–2428. Submitted on briefs February 15, 1999.—Decided March 23, 1999.*

(Also reported in 593 N.W.2d 913.)

†Petition to review denied.

849

On behalf of the defendant-appellant, the cause was submitted on the briefs of *David H. Hutchinson* of *Machulak, Hutchinson, Robertson, O'Dess & Reilly, S. C.* of Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *D. J. Weis* of *Habush, Habush, Davis & Rottier, S.C.* of Rhinelander.

Before Cane, C.J., Myse, P.J., and Hoover, J.

CANE, C.J. Universal Underwriters Insurance Company (Universal) appeals an interlocutory declaratory judgment[1] providing that: (1) the garage liability policy and excess liability coverage it provided Northwoods Ford Lincoln-Mercury, Inc., (Northwoods) extended to Julie Johnson, a customer who was driving a Ford Taurus that Northwoods had loaned her when she collided with the Henrys' van; and (2) Northwoods owned the Taurus when the accident occurred.[2] First, we hold that Northwoods owned the Taurus because under WIS. ADM. CODE § TRANS 139.05(1), Northwoods did not accept Johnson's offer to purchase. Second, we conclude that the garage liability policy covers Johnson because: (1) the policy's garage operations provision includes loaning a vehicle to Johnson while her car was being repaired at Northwoods' premises; and (2) the garage operations provision fails to invoke § 632.32(5)(c), STATS., the exception to the omnibus statute for motor vehicle handlers. Finally, we hold that because underlying coverage exists, excess liabil-

---

[1] On September 14, 1998, we granted Universal's petition for leave to appeal the trial court's August 14, 1998, declaratory judgment.

[2] The judgment also addressed the ownership issue and denied Universal's motion for reconsideration.

ity coverage applies to Johnson. Accordingly, we affirm the trial court's judgment.

## BACKGROUND

Northwoods is an automobile dealership engaged in sales and service of new and used cars. On December 18, 1995, Julie Johnson brought her Mazda pickup truck to Northwoods for repairs. While Northwoods repaired Johnson's vehicle, it provided her with a loaner vehicle, a used 1995 Ford Taurus. On December 21, Johnson told a Northwoods salesman that she was interested in purchasing the Taurus. Northwoods and Johnson agreed on a purchase price that included a trade-in on the Mazda pickup truck. Northwoods believed that the sale was a "done deal" because it had a "verbal contract" with Johnson. Johnson told Northwoods that she would return on December 22 to sign the paperwork.

When Johnson went to Northwoods after closing hours on December 22, a sales manager allowed her to remove her personal belongings from her pickup truck. At that time, Johnson again indicated that she would return to the dealership the next day to sign the paperwork. Although a motor vehicle purchase contract was drawn up, the parties never signed it. On December 26, Johnson was driving the Taurus when she was involved in an automobile accident with the Henrys' van. Johnson and Elizabeth Henry, one of three children in the van, were killed. Four other members of the Henry family were injured. The Henrys sued General Casualty, with which Johnson carried personal automobile liability insurance with limits of $50,000 per person, $100,000 per occurrence, and $50,000 in property damage. Additionally, the Henrys sued Universal, with which Northwoods had a garage

liability insurance policy for $500,000 in liability coverage and six million dollars in excess liability coverage.

The Henrys filed a motion for a declaratory judgment that Universal's garage operations provision provided Johnson with liability coverage for the auto accident. In response, Universal filed a motion for summary judgment, requesting dismissal because its policy provided no coverage. The trial court denied Universal's motion and granted the Henrys' motion, declaring that Universal's policy extended the following to Johnson: (1) $500,000 in auto liability coverage under the garage operations provision; and thus, (2) six million dollars in excess liability coverage. In effect, the trial court granted partial summary judgment on the ownership issue when it concluded that Northwoods owned the Taurus as a matter of law. After we decided *Binon v. Great Northern Ins. Co.*, 218 Wis. 2d 26, 580 N.W.2d 370 (Ct. App. 1998), Universal filed a motion for reconsideration of its summary judgment motion, but the trial court denied it. We then granted Universal leave to appeal.

## OWNERSHIP

We review a trial court's partial summary judgment de novo, but we nonetheless value a trial court's decision on such a question. *See M&I First Nat'l Bank v. Episcopal Homes Mgmt.*, 195 Wis. 2d 485, 496–97, 536 N.W.2d 175, 182 (Ct. App. 1995). Whether the trial court properly granted partial summary judgment is a question of law. *Id.* In making this determination, we apply the same methodology as the trial court. *See Binon*, 218 Wis. 2d at 30, 580 N.W.2d at 372. Because summary judgment methodology is well known, we need not repeat it except to observe that summary

judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Section 802.08(2), STATS.

The parties agree that Universal's policy does not cover Johnson's negligence unless Northwoods owned the Taurus that Johnson was driving when the accident occurred. They dispute, however, whether material issues of fact exist regarding ownership. Universal contends that the record demonstrates the existence of a genuine question of fact regarding Johnson's and Northwoods' intent to transfer the Taurus' ownership to Johnson. To support its argument, Universal cites *Tesky v. Tesky*, 110 Wis. 2d 205, 208, 327 N.W.2d 706, 707 (1983) (citing *Bacheller v. Employers Mut. Liab. Ins. Co.*, 93 Wis. 2d 564, 287 N.W.2d 817 (1980)), which holds that the title certificate is only evidentiary and that we must look to the parties' intent and conduct when the title has not been endorsed and delivered. The Henrys distinguish *Tesky* and *Bacheller* on the basis that those cases involve private sales, not a sale between a dealership and an individual. The Henrys argue that to transfer ownership when a dealer is one of the parties to an automobile sale, the parties must sign the contract or the dealer must accept a down-payment, deposit or title for trade unit from a prospective customer. We agree with the Henrys.

WISCONSIN ADM. CODE, § TRANS 139.05 prohibits the sale of automobiles between a dealer and a retail purchaser without a written signed contract.[3] In the

---

[3] WISCONSIN ADM. CODE, TRANS 139.05(1) provides:

USAGE. All dealer and salesperson licensees shall furnish retail purchasers with a copy of a document clearly entitled "Motor Vehicle Purchase Contract" that clearly notifies the prospective retail

absence of a signed contract between a dealer and a purchaser, § TRANS 139.05(1) renders void any agreement to purchase an automobile. *See Huff & Morse, Inc. v. Riordon*, 118 Wis. 2d 1, 10, 345 N.W.2d 504, 509 (Ct. App. 1984) (contract violating administrative code provision is invalid). In addition, such a contract is executed when the dealer accepts a down payment, deposit, or title for a trade-in unit from a prospective retailer purchaser. WIS. ADM. CODE § TRANS 139.05(1)(b).

■
The record contains evidence that Johnson intended to return to the dealership and sign the motor vehicle purchase contract, that she believed she had purchased the Taurus, and that Northwoods believed it had a contract with Johnson for the Taurus' sale. It is undisputed, however, that the parties never signed the motor vehicle purchase agreement. Likewise, the record neither reflects that Johnson offered nor that Northwoods accepted a down payment, deposit, or title for the Mazda pickup. Thus, no valid and binding motor vehicle purchase contract for the Taurus was executed, and as a matter of law, Northwoods never

---

purchaser on its face that the purchaser is making an offer to purchase that shall become a binding motor vehicle purchase contract if accepted by the dealer licensee, that the dealer licensee shall accept or reject the offer within 2 working hours or the offer is automatically voided . . . .

Subsection (1)(a) provides that: "[I]n addition, whenever a motor vehicle offer to purchase is signed and accepted by a dealer licensee, becoming a binding motor vehicle purchase contract, an exact copy of the purchase contract shall be provided to the purchaser." Subsection (1)(b) provides that a motor vehicle purchase contract is executed "whenever the dealer accepts a down payment, deposit or title for trade-in unit from a prospective retail purchaser."

transferred its ownership to Johnson. Accordingly, we affirm the trial court's determination that Northwoods owned the Taurus when the accident occurred.

## GARAGE OPERATIONS PROVISION

■ The parties agree that the auto hazard provision[4] is excluded and therefore does not cover the accident. Although the accident meets the definition of an auto hazard, Universal's definition of an insured for auto hazard coverage invokes the motor vehicle handler exception to the omnibus statute, § 632.32(5)(c), STATS.[5] Accordingly, this case turns on whether the garage operations provision provides coverage. Wisconsin's omnibus statute, § 632.32(3), STATS., extends insurance coverage to any permissive user of an insured motor vehicle and to any person legally responsible for the use of the motor vehicle. *Binon,* 218 Wis.

---

[4] The policy defines "auto hazard" as:

the ownership, maintenance, or use of any AUTO YOU own or which is in YOUR care, custody and control and:

(1) used for the purpose of GARAGE OPERATIONS;

(2) used principally in GARAGE OPERATIONS with occasional use for other business or nonbusiness purposes;

(3) furnished for the use of any person or organization.

[5] The parties agree that the following policy language triggers the motor vehicle handler exception with respect to the auto hazard provision:

With respect to the AUTO HAZARD . . . of WHO IS AN INSURED, the most WE will pay is that portion of such limit needed to comply with the minimum limits provision law in the jurisdiction where the OCCURRENCE took place. When there is other insurance applicable, WE will pay only the amount needed to comply with such minimum limits after such other insurance has been exhausted.

2d at 30–31, 580 N.W.2d at 372. It is undisputed that if the garage operations provision indeed applies, Johnson, a permissive user, would be covered as a named insured under Universal's garage policy unless an exception to the omni bus statute applies. *See* § 632.32(3)(a), STATS.

Coverage Part 500 of Universal's policy provides "GARAGE" coverage and states that it will:

> pay all sums the INSURED legally must pay as DAMAGES (including punitive DAMAGES where insurable by law) because of INJURY to which this insurance applies caused by an OCCURRENCE arising out of GARAGE OPERATIONS *or* AUTO HAZARD. (Emphasis added.)

"An accident" is an occurrence under the policy. Further, the policy defines garage operations as:

> the ownership, maintenance or use of that portion of any premises where YOU conduct YOUR AUTO business *and all other operations necessary or incidental thereto.* (Emphasis added.)

The interpretation of an insurance policy is a question of law this court reviews de novo, and we apply the same rules of construction that we apply to contracts generally. *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 810, 456 N.W.2d 597, 598 (1990). In interpreting the policy, our objective is to ascertain the parties' true intentions. *Kremers-Urban Co. v. American Employers Ins. Co.*, 119 Wis. 2d 722, 735, 351 N.W.2d 156, 163 (1984). We must give an insurance policy's language its common and ordinary meaning and construe it as would a reasonable person in the insured's position. *Cieslewicz v. Mutual Serv. Cas. Ins. Co.*, 84 Wis. 2d 91,

97–98, 267 N.W.2d 595, 598 (1978). An insurance policy is ambiguous if the language, when read in context, is fairly or reasonably susceptible to more than one construction. *See Sprangers v. Greatway Ins. Co.*, 182 Wis. 2d 521, 536–37, 514 N.W.2d 1, 6 (1994). Whether ambiguities exist is a question of law. *See Western Cas. & Surety Co. v. Budrus*, 112 Wis. 2d 348, 351, 332 N.W.2d 837, 839 (Ct. App. 1983). Absent a finding of ambiguity, we will not use rules of construction to rewrite an insurance contract's language. *See Donaldson v. Urban Land Interests, Inc.*, 211 Wis. 2d 224, 231, 564 N.W.2d 728, 731 (1997).

Initially, Universal contends that *Binon* is dispositive of this case. We disagree. In *Binon,* a dealership leased a car to a customer, and when the customer later brought the car to the dealership for repairs, the dealership loaned him another vehicle. *Id.* at 29, 580 N.W.2d at 372. While driving the loaner, the customer collided with the Binons' vehicle, injuring them. *Id.* The Binons then sought recovery under the dealership's garage liability policy with Universal. *Id.* We held that because Universal's policy invoked the motor vehicle handler exception to the omnibus statute, it did not cover the accident. *Id.* at 37, 580 N.W.2d at 375. Significantly, the only policy language included in *Binon* is that invoking the motor vehicle handler exception. *Binon* does not consider the definitions of auto hazard or garage operations. *See generally id.* Thus, while this case's facts are markedly similar to *Binon*'s, there is nothing in *Binon* confirming Universal's assertion that the court construed the same policy language. Moreover, *Binon* does not address whether auto liability is covered solely by the auto hazard provision; the opinion does not even mention "auto hazard." Thus,

while *Binon* is helpful to our analysis, it is not directly on point.

Next, Universal argues that the garage operations provision applies only to accidents involving ownership, maintenance, or use of Northwoods' *premises.* When any auto is used for the purpose of garage operations, it maintains, coverage is provided solely under the auto hazard provision because: (1) the definition of an auto hazard includes an auto used for garage operations; (2) the garage operations provision makes no mention of a person using an auto; and (3) interpreting the garage policy to cover auto accidents under garage operations would render the auto hazard provision superfluous. Therefore, Universal reasons, the auto hazard and garage operations provisions are mutually exclusive. It concludes that because the auto hazard provision is the only provision that covers auto accidents and because the parties agree that it provides no coverage here, the policy affords no coverage.

On the other hand, the Henrys read the policy to provide coverage for auto accidents under both the auto hazard provision and the garage operations provision. They assert that a reasonable insured would believe the definition of garage operation s, which includes "all other operations necessary or incidental thereto," is broad enough to cover the accident. Additionally, they contend that, unlike the auto hazard provision, the garage provision does not invoke the motor vehicle handler exception. We agree with the Henrys.

The definition of garage operations provides coverage for liability arising from the ownership, maintenance and use of the premises where Northwoods conducts its auto business, but also for "all other operations necessary or incidental thereto." As the trial court noted, the "necessary or incidental" lan-

guage is very broad. We conclude that although the provision is very broad and although neither "necessary" nor "incidental" are defined in the policy, the provision unambiguously covers the accident here because providing a loaner to a customer whose car is being repaired at an auto business' premises, is incidental to the operation of the auto business.[6]

In *Home Mut. Ins. Co. v. INA*, 20 Wis. 2d 48, 51, 121 N.W.2d 275, 277 (1963), our supreme court held that a similar policy provision was not ambiguous. It addressed the meaning of "all operations necessary or incidental thereto" in a garage policy providing liability

---

[6] While we need not look any further than the policy's unambiguous language, we observe that our conclusion that "all operations necessary or incidental thereto" is unambiguous finds support in other jurisdictions. A Minnesota court interpreting a policy defining garage operations as including "all other operations necessary or incidental thereto" found the provision unambiguous. *See American Hardware Mut. Ins. Co. v. Darv's Motor Sports, Inc.*, 427 N.W.2d 715, 718–19 (Minn. App. 1988). The court held that a youngster's injuries resulting from the operation of a garage's motorcycle for promotional purposes was necessary and incidental to the promotion and sale of the garage's products and thus, necessary and incidental to the garage's business. *Id.*

Likewise, in *Lumbermens Mut. Cas. Co. v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 321 S.E.2d 10, 12 (N.C. App. 1984), the court construed a similar definition of garage operations: "the ownership, maintenance or use of the premises for the purposes of a garage and all operations necessary or incidental thereto." *Id.* at 11. The court noted that "incidental" was unambiguous as applied to the case's undisputed facts. It held that an accident on a highway, when a garage owner had to repair a stalled truck after he just serviced it, and the owner hit a customer who was helping him, was, as a matter of law, incidental to the use of the premises as a garage. *Id.* at 13.

coverage for the "ownership, maintenance or use of the premises for the purpose of an automobile repair shop, service station, storage garage or public parking place and *all other operations necessary or incidental thereto*." (Emphasis in original.) The court defined "incidental" as " 'depending upon or appertaining to something else as primary . . . something incidental to the main purpose.' " *Id.* at 54, 121 N.W.2d at 278 (quoting BLACK'S LAW DICTIONARY (4th ed.)). Although *Home Mutual* held that a service station was not directly liable for a customer's injury that occurred off the station's premises because no "direct relationship" existed between the customer and the station, the court held that if the original arrangements for the car's repair had been made directly between the station and the customer, as it was between Johnson and Northwoods, the service station's activity would have been incidental to its operations. *See id.* at 52, 54, 121 N.W.2d 277–78. Of particular note, the accident need not occur on the auto business premises, as long as the activity is incidental to the auto business' main activity. *See id.*

We conclude that loaning the vehicle to Johnson while her vehicle was being repaired was incidental to Northwoods' auto business. Loaning her the Taurus resulted from a direct relationship between Johnson and Northwoods; the original arrangements for the repair were made directly between them. *See id.* at 54, 121 N.W.2d at 278. As a service to its potential retail sales customer and in connection with its automobile repair business, Northwoods let Johnson use the Taurus. As such, providing a loaner car to Johnson was incidental to Northwoods' auto business.

Additionally, Universal asserts that interpreting the policy to provide automobile liability under both

the auto hazard provision and the garage operations provision would render the auto hazard coverage meaningless and superfluous. *See Oaks v. American Fam. Mut. Ins. Co.*, 195 Wis. 2d 42, 47–48, 535 N.W.2d 120, 122 (Ct. App. 1995); *see also Berg v. Schultz*, 190 Wis. 2d 170, 175, 526 N.W.2d 781, 782–83 (Ct. App. 1994). In response, the Henrys argue that rules of construction apply only when insurance policy language is ambiguous; thus, because the policy is unambiguous, the Henrys maintain that we need not resort to the rule of construction Universal invokes. *See International Chiropractors Ins. Co. v. Gonstead*, 71 Wis. 2d 524, 527, 238 N.W.2d 725, 727 (1976). The Henrys are correct.

■

The policy provides two types of garage liability coverage, auto hazard and garage operations. That two separate provisions unambiguously provide coverage for the same incident does not render the policy ambiguous. *See Smith v. State Farm Fire & Cas. Co.*, 192 Wis. 2d 322, 330–31, 531 N.W.2d 376, 379–80 (Ct. App. 1995). In *Smith*, we addressed an insured's argument that a racing exclusion in a homeowner's policy was rendered superfluous if snowmobiling was excluded under another policy provision. *See id.* In that case, we held that "no ambiguity arises merely because the existence of two exclusions provides two separate reasons for denying coverage for snowmobile racing off insured premises." *See id.* Likewise, Universal's election to provide duplicative coverage under both the auto hazard and garage operations provisions neither renders the auto hazard provision meaningless nor the policy ambiguous.

■

Nevertheless, Universal argues that even if Johnson were an insured under the garage operations

provision, the motor vehicle handler exception to the omnibus statute applies. This exception, § 632.32(5)(c), STATS.,[7] allows the insurer to restrict coverage to only the "motor vehicle handler"[8] when "there is no other valid and collectible insurance" in effect. *See id.* The exception is not self-executing, however. *See Binon,* 218 Wis. 2d at 31–32, 580 N.W.2d at 373. Rather, if a motor vehicle handler wants to take advantage of the exception, the insurer must either insert language in the policy that: (1) permissive users are restricted to the minimum statutory liability limits; or (2) the users cannot avail themselves of the policy unless there is no other valid collectible insurance whether primary, excess or contingent. *See id.* (citing *Carrell v. Wolken,* 173 Wis. 2d 426, 436–37, 496 N.W.2d 651, 655 (Ct. App. 1992)).

Relying on *Binon,* Universal contends that its garage operations provision invokes the motor vehicle handler exception because if an automobile used in garage operations is involved in an accident, it triggers the auto hazard coverage. This argument is based on its contention that auto accidents are covered only under the auto hazard provision, but Universal's policy does not say this.

---

[7] Section 632.32(5)(c), STATS., provides:

> If the policy is issued to a motor vehicle handler, it may restrict coverage afforded to anyone other than the motor vehicle handler or its officers, agents or employes to the limits under s. 344.01(2)(d) and to instances when there is no other valid and collectible insurance with at least those limits whether the other insurance is primary, excess or contingent.

[8] Under § 632.32(2)(b), STATS., 1995–96, motor vehicle handler "means a motor vehicle sales agency, repair shop, service station, storage garage or public parking place." The parties do not dispute that Northwoods is a motor vehicle handler.

There is nothing in Universal's policy stating that auto accidents are not covered under the garage operations provision. Rather, the facts here fit the definitions of both an auto hazard and a garage operation. The policy is unambiguous in this regard, and its plain language dictates this conclusion. The garage operations provision does not invoke the motor vehicle handler exception; rather, as the trial court determined, the policy limits the exclusion to the definition of an insured under the auto hazard provision. Therefore, under § 632.32(3)(a), STATS., Johnson has the same coverage as a named insured under the policy. Why Universal elected to apply this exception to only the auto hazard provision and not to the garage operations provision is not for us to decide, and we will not rewrite a policy to modify coverage that neglects to include the motor vehicle handler exception. *See Donaldson*, 211 Wis. 2d at 231, 564 N.W.2d at 731. Thus, coverage under the garage operations provision remains.

### EXCESS LIABILITY COVERAGE

Finally, Universal contends that its excess liability provision[9] is not triggered because underlying coverage must exist for the excess provision to apply, citing *Amcast Indus. Corp. v. Affiliated FM Ins. Co.*, 221 Wis.

---

[9] Universal's excess coverage provision provides that it: "will pay for LOSS, subject to the terms and conditions of this Coverage Part, in excess of: (a) coverage provided in any UNDERLYING INSURANCE." Underlying insurance means "coverage and limits of liability afforded to YOU by the underlying policy(s) or insurance scheduled in the declarations for this Coverage Part."

2d 145, 162 n.12, 584 N.W.2d 218, 225 n.12 (Ct. App. 1998). It reasons that because there is no underlying insurance, there can be no loss in excess of its underlying insurance. In response, the Henrys agree that underlying coverage must exist before excess coverage applies, but dispute Universal's contention that no underlying coverage exists. Because we have concluded that underlying coverage exists, Universal's argument fails.[10]

*By the Court.*—Judgment affirmed.

[10] In its reply brief, Universal argues that no excess coverage exists because there is no insurable "loss" as Johnson is not an insured for purposes of excess coverage. Although Universal suggests this argument in the section of its main brief in which it sets forth the policy language, it fails to make the argument in its main brief. We will not address arguments raised for the first time in a reply brief. *Hogan v. Musolf*, 157 Wis. 2d 362, 381 n.16, 459 N.W.2d 865, 873 n.16 (Ct. App. 1990), *rev'd on other grounds*, 163 Wis. 2d 1, 471 N.W.2d 216 (1991).