**Ken and Sandra BEGALKE d/b/a Ken's Septic Cleaning, Plaintiffs,**

v.

**STERLING TRUCK CORPORATION and Freightliner, LLC, Defendants.**

No. 06–C–186–C.

United States District Court, W.D. Wisconsin.

July 12, 2006.

Thomas E. Lister, Thomas E. Lister, S.C., Black River Fall, WI, William S. Pocan, Jastroch & Labarge, S.C., Waukesha, WI, for Plaintiffs, Ken Begalke, Sandra Begalke, and Ken's Septic Cleaning.

Mitchell S. Moser, Quarles & Brady, Milwaukee, WI, for Defendants, Reightliner, LLC and Sterling Truck Corporation.

OPINION and ORDER

CRABB, District Judge.

In this civil action for monetary relief, plaintiffs Ken Begalke and Sandra Begalke contend that defendants Sterling Truck Corporation and Freightliner, LLC, breached their duties to plaintiffs under Wisconsin law and the Magnuson–Moss Warranty Act, 15 U.S.C. §§ 2301–2312, by failing to repair defects in a truck plaintiffs purchased from them. Plaintiffs filed this suit in the Circuit Court for Chippewa County, Wisconsin; defendants removed it to this court. Jurisdiction is present under 28 U.S.C. § 1332.

Now before the court is defendants' motion for summary judgment on plaintiffs' claims under the Magnuson–Moss Act and under Wisconsin's "Lemon Law," Wis. Stat. § 218.0171. Because plaintiffs have agreed to voluntary dismissal of their claim under the Magnuson–Moss Act, defendants will be granted summary judgment with respect to that claim. However, defendants' motion will be denied with respect to plaintiffs' claims under Wis. Stat. § 218.0171 because the truck alleged to be a "lemon" was purchased in Wisconsin.

From the parties' proposed findings of fact, I find the following to be material and undisputed.

### UNDISPUTED FACTS

#### A. *Parties*

Plaintiffs Ken Begalke and Sandra Begalke are Wisconsin citizens, residing in

Holcombe, Wisconsin. For the past 23 years, plaintiffs have operated Ken's Septic Cleaning, a licensed septic cleaning business, from their home.

Defendant Sterling Truck Corporation is a Delaware corporation with its principal place of business in the state of Michigan.

Defendant Freightliner, LLC, is a limited liability company. It is a wholly owned subsidiary of DaimlerChrysler North America Holding Corporation, which is incorporated in Delaware and has its principal place of business in the state of Michigan.

### B. *Truck Purchase*

Plaintiffs use large trucks for many of their business operations. In the spring of 2004, plaintiff Sandra Begalke had several telephone conversations with Matt Peterson, a sales employee of Boyer Trucks, to discuss purchasing a new truck from defendant Sterling Truck Company. During one conversation, plaintiff Sandra Begalke expressed concern that if she purchased the truck, she would have to travel to Minnesota in order to service it. Peterson reassured her that the truck could be serviced at Boyer Trucks' location in Superior, Wisconsin.

Sometime between mid June and late July 2004, Peterson came to plaintiffs' home to discuss their interest in purchasing a Sterling truck. On a separate occasion, another Boyer Trucks employee came to plaintiffs' home to determine the trade-in value of the truck plaintiffs were using. On July 14, 2004, Peterson visited plaintiffs' home again. At that time, he completed a form (which defendants call an "order form" and plaintiffs call a "purchase contract") and accepted a check from plaintiffs in the amount of $2,000.00 as a down payment on the purchase price of the new vehicle. The form named Ken's Septic Cleaning as buyer and Boyer Trucks Lauderdale as seller. It contained the following language:

The front and back of this Order comprise the entire agreement affecting this purchase and no other agreement or understanding of any nature concerning the same has been made or entered into or will be recognized. I hereby certify that no credit has been extended to me for the purchase of this motor vehicle except as appears in writing on the face of this agreement. I have read the matter printed on the back hereof and agree to it as part of this order the same as if it were printed above my signature. I certify that I am 18 years of age or older, and hereby acknowledge receipt of a copy of this order.

On the back of the form were terms relating to warranties, delivery and pricing of the vehicle. Among these terms is paragraph 2, which reads:

**Purpose:** By signing the CONTRACT, I agree to buy the VEHICLE from YOU. By accepting this CONTRACT, YOU agree to deliver the VEHICLE to ME if the VEHICLE is in YOUR inventory. If the VEHICLE is not in YOUR inventory, YOU agree to order the VEHICLE from the manufacturer, and after receiving the VEHICLE from the manufacturer, to deliver the VEHICLE to ME.

Paragraph 6 states:

**MY Refusal to Take Delivery:** Unless this CONTRACT is non-binding because YOU are arranging credit for ME, or unless I have cancelled this CONTRACT pursuant to paragraphs 3 & 4, I understand that YOU may retain the cash down payment I have given YOU as an offset to YOUR damages if I refuse to complete MY purchase ...

Plaintiff Ken Begalke signed the form and Peterson initialed it. Above Peterson's initials was the statement:

The terms of this contract of sale were agreed upon and the contract signed in

this dealership on the date noted at the top of this form. If credit is involved, this order is not valid in conjunction with a credit sale until a credit disclosure is made as described in regulation "Z," and the buyer accepts the credit extended.

Above plaintiff Ken Begalke's signature was the statement:

**IMPORTANT:** THIS MAY BE A BINDING CONTRACT AND YOU MAY LOSE ANY DEPOSITS IF YOU DO NOT PERFORM ACCORDING TO ITS TERMS. UNLESS OTHERWISE STATED, ALL INCENTIVES TO DEALER.

On October 25, 2004, plaintiffs traveled to Lauderdale, Minnesota to pick up their new truck, which had been delivered to the Boyer Trucks dealership. When plaintiffs arrived, they signed a form entitled Wisconsin Title & License Plate Application and a delivery verification form. At that time, plaintiffs paid the remaining balance due under the purchase contract (a sum of $20,859.81). A portion of that balance included Wisconsin sales tax and fees for Wisconsin license plates and title registration.

Plaintiffs experienced numerous problems with their vehicle. The "check engine" light and engine warning lights lit up repeatedly. The engine lacked power and "hesitated" or "stumbled" when a driver tried to accelerate the vehicle. In addition, plaintiffs have had problems with the truck's fuel system. Plaintiffs took the truck to several authorized Sterling dealers, who made attempts to fix the defects on October 25, 2004, December 2, 2004, December 15, 2004, January 6, 2005, February 9, 2005, March 14, 2005, April 14, 2005, September 7–8, 2005, September 26, 2005, and October 19, 2005. In December 2005, plaintiff Ken Begalke was forced to stop driving the truck because of the problems he had experienced with it. On January 12, 2006, plaintiffs asked defendants Sterling Truck Corporation and Freightliner LLC for a refund and offered to return the vehicle to defendants. Defendants did not refund plaintiffs' money or offer them any other remedy.

OPINION

Wisconsin's "Lemon Law" is a remedial statute that provides buyers of new "motor vehicles" with several remedies for the failure of a manufacturer to repair defects in a vehicle under warranty. *Garcia v. Mazda Motor of America, Inc.*, 2004 WI 93, ¶ 1, 273 Wis.2d 612, 682 N.W.2d 365; Wis. Stat. § 218.0171 (2001–02). The statute defines a "motor vehicle" as a vehicle that a customer "purchases or accepts transfer of in this state." Wis. Stat. § 218.0171(1)(d). Defendants' motion for summary judgment does not address whether the Sterling truck they sold plaintiffs was defective or qualifies as a "lemon" under Wisconsin law, because these are questions that defendants assert involve disputed facts and could not be resolved on summary judgment. Instead, defendants make a more fundamental argument: they contend that the truck plaintiffs purchased is not a "motor vehicle" subject to Wis. Stat. § 218.0171(1)(d) because plaintiffs did not purchase it or accept transfer of it in the state of Wisconsin.

Plaintiffs contend that they "purchased" the Sterling truck in Wisconsin when they and Peterson signed the purchase contract and Peterson accepted plaintiffs' $2,000 down payment. In support of their position, plaintiffs cite *Henry ex rel. Weis v. General Casualty Co. of Wisconsin*, 225 Wis.2d 849, 857, 593 N.W.2d 913, 916 (Ct. App.1999), an insurance case that presented the question whether a dealership or would-be purchaser should be held responsible for damage caused to third parties when the vehicle being sold was involved

in an accident. In order to answer that question, the Wisconsin Court of Appeals had to determine who owned the vehicle at the time of the accident. The facts of that case were undisputed: Julie Johnson, the would-be purchaser, brought her car to a dealership for repair. *Id.* at 855, 593 N.W.2d 913. The dealership lent her a car to use while her vehicle was being repaired; after driving the car for several days, Johnson decided to trade in her old car and purchase the loaner car. *Id.* While driving the dealership vehicle, Johnson crashed into a van carrying members of the Henry family. Johnson and one of the Henry children were killed. *Id.* At the time of the accident, Johnson had agreed verbally to purchase the new vehicle, but had not yet transferred the title for her old vehicle or signed a purchase contract with the dealer. *Id.* at 855, 858, 593 N.W.2d 913.

Wanting access to the larger insurance policy carried by the dealership, the Henrys asserted that Johnson had not purchased the vehicle and "argue[d] that to transfer ownership of a vehicle from a dealer to a private buyer, the parties to the sale must sign the [purchase] contract or the dealer must accept a down-payment, deposit or title for trade unit from a prospective customer." *Id.* at 857, 593 N.W.2d 913. The court agreed, relying in part on Wis. Admin. Code § TRANS 139.05, which "prohibits the sale of automobiles between a dealer and a retail purchaser without a written signed contract." *Id.* at 857–58, 593 N.W.2d 913. The code provision requires all automobile dealers to provide purchasers with a written contract "that clearly notifies the prospective retail purchaser ... that the purchaser is making an offer to purchase that *shall become a binding motor vehicle purchase contract* if accepted by the dealer licensee." Wis. Admin. Code § TRANS 139.05(1)(a) (emphasis added). Moreover, the provision states, "Whenever a motor vehicle offer to

purchase is signed and accepted by a dealer licensee, *becoming a binding motor vehicle purchase contract,* an exact copy of the purchase contract shall be provided to the purchaser." Wis. Admin. Code § TRANS 139.05(1)(b) (emphasis added).

Defendants contend that *Henry* is "wholly irrelevant" to the question at issue which turns on where the purchase occurred. I am not persuaded. Although the *Henry* case arose in a context different from the one present here, the court of appeals' comments regarding what it means to purchase a vehicle under Wisconsin law are clear: the court "agreed" that "to transfer ownership when a dealer is one of the parties to an automobile sale, the parties must sign the contract or the dealer must accept a down-payment, deposit or title for trade unit from a prospective customer." *Henry,* 225 Wis.2d at 857, 593 N.W.2d 913. In this case, the parties signed a purchase contract *and* the dealer accepted a down payment at plaintiffs' home in Wisconsin. Consequently, the purchase occurred in Wisconsin on July 14, 2004, when plaintiffs and the dealer entered into a binding purchase contract that obligated plaintiffs to take delivery of the new vehicle and to pay the remainder of the purchase price at the time of delivery.

Because plaintiffs purchased the vehicle in Wisconsin, Wis. Stat. § 218.0171 applies to this case. Therefore, I need not decide whether plaintiffs "accepted transfer of" the vehicle in Minnesota or Wisconsin. Defendants' motion for summary judgment will be denied with respect to plaintiff's claim under Wisconsin's "lemon law."

### ORDER

IT IS ORDERED that defendants' motion for summary judgment is

1. GRANTED with respect to plaintiffs' claim that defendants violated the Magnuson–Moss Warranty Act; and

2. DENIED with respect to plaintiffs' claim that defendants violated Wis. Stat. § 218.0171.