**HUDSON UNIVERSAL, LTD.**

v.

**AETNA INSURANCE COMPANY**

**Civil Action No. 94–436(NHP).**

United States District Court,
D. New Jersey.

Dec. 12, 1997.

338

Michael S. Kimm, Hackensack, NJ, for Plaintiff Hudson Universal, Ltd.

Gregory J. Irwin, Harwood Lloyd, Hackensack, NJ, for Defendant Aetna Casualty & Surety Company (improperly pleaded as Aetna Insurance Company).

### LETTER OPINION ORIGINAL ON FILE WITH CLERK OF THE COURT

POLITAN, District Judge.

Dear Counsel:

This matter comes before the Court on the motion for summary judgment by defendant, Aetna Casualty & Surety Company ("Aetna"). The case involves denial of coverage by Aetna in connection with a claim that was submitted by the plaintiff, Hudson Universal, Ltd. ("Hudson"). The narrow question in this matter is whether Aetna exercised bad faith in its denial of coverage. Oral argument was heard on October 14, 1997. For reasons stated herein, defendant's motion is **GRANTED**, and plaintiff's bad faith claim is **DISMISSED WITH PREJUDICE.**

### STATEMENT OF FACTS

This action arose out of a dispute between the two parties concerning coverage under an insurance policy underwritten by Aetna and issued to Hudson, to cover various losses, including certain advertising injuries. The sequence of relevant events began with a suit initiated by Bausch & Lomb that charged Hudson with patent infringement, trademark infringement, unfair competition, and false designation. The charges were in connection with certain sunglasses that Hudson was marketing and selling with a design "substantially similar" to Bausch & Lomb's sunglasses. After numerous developments which are irrelevant for purposes of this pending motion, the underlying action between Bausch & Lomb and Hudson was finally settled in November 1995 by Hudson's payment of $25,000 to Bausch & Lomb to-

gether with its agreement to discontinue handling certain sunglasses.

Hudson sent a demand for coverage to its insurance carrier claiming coverage under the "advertising injury" provision of the insurance policy. Subsequently, Aetna, Hudson's insurance carrier during the underlying period, denied coverage and asserted that such wrongdoings were not covered under the policy. Moreover, Aetna argued that it is not obligated to indemnify Hudson for Bausch & Lomb's claims because the alleged patent-design infringement, trademark infringement, unfair competition, and false designation did not fall within the definitions of "advertising injury."[1] Furthermore, Aetna maintained that Hudson's alleged acts of infringement did not arise out of Hudson's advertising activities.

Hudson initiated an action seeking insurance coverage from Aetna pursuant to the insurance agreement. In effect, both parties sought a court's interpretation of the language of the Insurance Agreement.

The Insurance Agreement provides that it will cover the loss which the insured becomes legally obligated to pay as damages because of advertising injuries.

By the terms of the Insurance Agreement:

"Advertising injury" means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organizations's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business;

d. Infringement of copyright, title or slogan.

Such "offenses" must be committed in the course of advertising your goods or products.

This action was more or less litigated to completion before another judge of this District. On September 27, 1995, an order and accompanying opinion were filed regarding the coverage under the insurance agreement. The judge rejected Hudson's contention that Bausch & Lomb's allegations of patent infringement were covered under the "advertising injury" provision of the policy. However, the judge held the allegations of trademark infringement, unfair competition, and false designation by Bausch & Lomb are covered under the policy provision covering "infringing of slogan or title" or the provision covering "misappropriation of advertising ideas."

The actual denial of coverage and the subsequent events as illustrated above, coupled with the alleged mishandling of the claim, is the basis for Hudson's claim for bad faith denial of coverage against its insurance carrier. Aetna, to the contrary, points to the prior decision and unsettled law claiming that these coverage issues were "fairly debatable" at the time it disclaimed coverage in December 1991 and indeed are still "fairly debatable." The present motion to dismiss the bad faith claim followed.

It is Aetna's contention that summary judgment is appropriate because such bad faith allegations in a third-party context are not recognized under the law and, even if they were, they would be limited by the "fairly debatable" standard, under which Hudson has failed to show any genuine issue of material fact.

### DISCUSSION

The standard for a summary judgment motion is set forth in Fed.R.Civ.P. 56(c), which provides in pertinent part:

[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving par-

---

1. Provision (B)(6)(b) of the Insurance Agreement states that "[t]his insurance does not apply: to 'advertising injury' arising out of infringement of trademark, service mark or trade name, other than titles or slogans, by use thereof on or in connection with goods, products or services sold, offered for sale or advertised."

ty is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

The movant has the initial burden of identifying evidence that it believes shows an absence of genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). When the nonmovant will bear the burden of proof at trial, the movant's burden can be discharged by showing that there is an absence of evidence to support the nonmovant's case. *Id.* at 325, 106 S.Ct. at 2553.

If the movant establishes the absence of a genuine issue of material fact, the burden shifts to the nonmovant to do more than "simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The nonmoving party is given the benefit of any reasonable inferences to be drawn from the record. *See, e.g., Josey v. John R. Hollingsworth Corp.,* 996 F.2d 632, 637 (3d Cir.1993).

 At the outset, it is imperative for this Court to look to the circumstances of this case quite carefully, as it brings forth a novel issue to this jurisdiction. More particularly, the Court is faced with determining the appropriate standard for a bad faith *refusal* of coverage by an insurance carrier in the context of a third-party insurance contract.[2]

As a federal court sitting in diversity, the Court must apply the substantive law of the forum state to plaintiff's claim. Accordingly, the substantive law of New Jersey as determined by the state's highest court is applicable. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The Court's role is to predict what the state's highest court would decide if presented with the facts in our case.

The New Jersey Supreme Court has recognized bad faith in the third-party context arising out of the denial by an insurer to settle within policy limits. *See Rova Farms Resort, Inc. v. Investors Ins. Co.,* 65 N.J. 474, 323 A.2d 495 (1974). The case at bar does not involve alleged bad faith in settlement of a claim, but the alleged bad faith denial of coverage. The New Jersey Supreme Court has established a cause of action for bad faith in the denial of a claim in the first-party context by applying a "fairly debatable" standard. *See Pickett v. Lloyd's,* 131 N.J. 457, 621 A.2d 445 (1993).

The gravamen of most first-party complaints involve the insurer's wrongful denial of coverage. The question remains, however, whether this Court should extend the "fairly debatable" standard to a third-party case in which the alleged bad faith is the outright denial of coverage.

A third-party cause of action for bad faith originated during the turn of the century, and the New Jersey Supreme Court has squarely addressed such a cause of action. Typically, in third-party bad faith cases, a third party would sue the insured for an amount exceeding the limits of the insured's coverage and offer to settle for an amount equal to or less than those policy limits. At this point, the insurer would have no financial motive to accept the offer. By rejecting the offer, the insurer risked nothing more than the policy limits. By accepting it, the insurer would sacrifice the chance of winning at trial and owing the third-party nothing. The gravamen of bad faith causes of action in the third-party context involve such settlement tactics by insurers. *See Rova Farms,* 65 N.J. at 474, 323 A.2d 495.

In the realm of first-party bad faith claims, New Jersey courts have followed the standard that was formulated by the Wisconsin Supreme Court in *Anderson v. Continental Insurance Company.* *Anderson v. Continental Ins. Co.,* 85 Wis.2d 675, 271 N.W.2d 368 (1978). The standard is known as the "fairly debatable" standard. *Pickett,* 131 N.J. at 457, 621 A.2d 445. Essentially, this

---

**2.** Third-party insurance, essentially liability insurance, protects the interests of strangers, or third-parties, to the contract who are injured by the insured's conduct. First-party insurance, on the other hand, is insurance that protects against a direct loss by the insured under its own policy.

standard increases the burden on the plaintiff, since it must prove that the insurer acted intentionally rather than just proving that the insurer was unreasonable. *Id.* 271 N.W. 2d at 376–77.

If the Court were merely to apply *Rova Farms,* plaintiff's bad faith cause of action would have to be dismissed because in the case *sub judice,* there are several differences. First, Aetna denied coverage outright and did not tender a defense of the action. Second, Hudson settled for a sum well within the policy limits; the case never went to a verdict for a sum over the policy limits. Therefore, *Rova Farms* is inapplicable.

However, it is clear that there must be consequences arising out of the bad faith action of a third-party insurer in denying a claim outright where coverage was incontestable. This requirement must be balanced, however, with the necessity of allowing an insurer to make an informed claim decision on what it determines is a frivolous cause of action.

Though this is a case of first impression, the Court finds that New Jersey would extend the "fairly debatable" standard to the third-party context where an insurer denies coverage outright on a claim. Even though most of the jurisprudence on denial of coverage in New Jersey has been in the first-party context, the principles associated with the application of the "fairly debatable" standard are still applicable in this case.

Clearly, there is some difference in the treatment by the courts of first-party and third-party insurance. Nevertheless, arbitrary distinctions between types of policies should not be the fulcrum in cases such as the one *sub judice.* Rather, the factual events which unfold and the posture of the insurer—such as a denial of coverage or denial of a settlement offer—should govern in determining the appropriate standard to which the insurer is held. As the court in *Pickett* noted, "compensation should not be dependent on what label we place on an action but rather on the nature of the injury itself." 131 N.J. at 470, 621 A.2d 445.

In *Pickett,* the plaintiff, Burton Pickett, brought a bad faith cause of action against the insurer for breach of duty of good faith and fair dealing relating to a failure to promptly pay plaintiff's claim. *Id.* at 464, 621 A.2d 445. Plaintiff, after being involved in an accident that caused damages to his tractor trailer, reported the first-party claim to his insurer. Through a series of colossal blunders, the insured did not receive any payments for the underlying accident until nine months after the occurrence. *Id.* at 462–64, 621 A.2d 445. The Court imposed bad faith liability after finding that there was no debatably valid reason for the withholding of benefits. *Id.* at 481, 621 A.2d 445.

More particularly, the *Pickett* court adopted the standard embraced by many jurisdictions. That is, if a claim is "fairly debatable," no liability for bad faith will arise.

> "To show a claim of bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. It is apparent, then, that the tort of bad faith is an intentional one. * * * implicit in that test is our conclusion that the knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is a reckless * * * indifference to facts or to proofs submitted by the insured."

131 N.J. at 472, 621 A.2d 445 (*quoting Bibeault v. Hanover Ins. Co.,* 417 A.2d 313, 319 (R.I.1980)).

This "fairly debatable" standard is premised on the idea that when an insurer denies coverage with a reasonable basis to believe that no coverage exists, it is not guilty of bad faith even if the insurer is later held to have been wrong. "The rationale for this legal principle is based upon the potential in terrorem effect of bad faith litigation upon the insurer." *Polizzi Meats, Inc. v. Aetna Life & Cas. Co.,* 931 F.Supp. 328, 334 (D.N.J. 1996). "An insurer should have the right to litigate a claim when it feels there is a question of law or fact which needs to be decided before it in good faith is required to pay the claimant." *Anderson,* 271 N.W.2d at 377.

■ In order to impose "bad faith" liability, the insured must demonstrate that no debatable reasons existed for denial of the benefits available under the policy. "Under the 'fairly debatable' standard, a claimant who could not have established as a matter of law a right to summary judgment on the substantive claim would not be entitled to assert a claim for an insurer's bad faith refusal to pay the claim." *Pickett,* 131 N.J. at 472, 621 A.2d 445. This does not mean, however, as Hudson has asserted in its brief, that if summary judgment is granted the insured has established a bad faith claim. What the *Pickett* court said is that an insurer's disclaimer of coverage cannot be held to be in bad faith **unless** the insured is granted summary judgment on the issue of coverage.[3] Even then, if the coverage issue was "fairly debatable" at the time of the coverage decision, the insurer's decision would not constitute bad faith.[4]

A federal court in California utilized a somewhat similar standard in the context of a third-party insurance situation in which the insurer disclaimed coverage. *See Clemco Indus. v. Commercial Union Ins. Co.,* 665 F.Supp. 816 (N.D.Cal.1987), *aff'd,* 848 F.2d 1242 (9th Cir.1988) (unreported).

In *Clemco,* the court was faced with a coverage dispute wherein the insurer, Commercial Union, refused to share in the defense and indemnification of the plaintiff, Clemco Industries, which was faced with a spate of personal injury claims for silicosis arising out of the use of its sandblasting equipment. The insurer denied coverage outright because it determined that the appropriate "trigger" to be applied in claims involving silicosis should be manifestation, not exposure.

In holding that the insurer did not exhibit bad faith in denying coverage, the court stated that there was "ample room for intelligent disagreement on the choice between the 'exposure' theory and the 'manifestation' theory as concerns the policies at issue." 665 F.Supp. at 830. The court went on to reason that "Commercial should not be held liable for a difference of opinion. It did not act unreasonably, with intent to avoid clear obligation, or with any intent to deny Clemco coverage under the policies without justification." *Id.*

The Court finds this reasoning instructive and sufficiently similar to the "fairly debatable" standard utilized in New Jersey for first-party bad faith cases. An insurer should not be required to undertake the defense of a case where it makes an informed determination based on legal authority that it need not respond under a policy.

■ The Court now turns to the application of the foregoing principles to this case. Indeed, before the previous decision in this case, no New Jersey court had addressed coverage issues related to "advertising injuries." Most importantly, the definition of "advertising injury" found in the policy does not explicitly include trademark infringement, unfair competition, and false designation as alleged by Bausch & Lomb. The judge, using both Black's Law Dictionary and Random House Dictionary, was able to articulate a connection between the definition of "advertising injury" in the insurance agreement and "trademark."

Paradoxically, the connection, though credible, is still "fairly debatable." Moreover, the cases relied upon in the prior decision were decided after Aetna disclaimed coverage in December 1991. Plaintiff alleged that a California case that was decided during the claims process demanded coverage under the circumstances of its case. *See Bank of the West v. Superior Court,* 277 Cal.Rptr. 219 (Cal.App.1991). Hudson brought this case, which was published in *Forbes* Magazine, to Aetna's attention. Aetna determined that the decision, which was later reversed, did not change its position. Regardless, the decision centered around the meaning of the

---

**3.** It is clear that the determination of whether an insurance company has acted in bad faith requires, as a predicate, a determination that coverage exists for the loss claimed by the insured. *See O'Malley v. United States Fidelity & Guaranty Co.,* 776 F.2d 494, 500–01 (5th Cir.1985).

**4.** The Court cautions, however, that an insurer may not "create" a debate by denying coverage on an issue for which it consistently declines coverage as a matter of policy. The debatable issue must be well-grounded in the law.

words "unfair competition" in the policy, which are not present in Aetna's policy. *See Bank of the West v. Superior Court,* 2 Cal.4th 1254, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992).

Furthermore, the law still remains somewhat unsettled on the issue of whether policy terms "slogan" and "title" refer to trademark infringement. Indeed, other courts have come to different conclusions on this very issue. *See, e.g., Repeat–O–Type Stencil Mfg. Corp. v. St. Paul Fire & Marine Ins. Co.,* Dkt. No. 94–3673 (D .N.J. Jan. 31, 1996). *See also Houston Gen. Ins. Corp. v. BSM Corp.,* 843 F.Supp. 1264, 1266 (D.Ill.1994) (adopting report of Magistrate Judge, No. 92–C–6515, 1993 U.S. Dist. LEXIS 4725 (N.D.Ill. Apr. 13, 1993)).

The previous judge also held that the phrase "misappropriation of style of doing business" in the policy's definition of "advertising injury" was broad enough to include trademark infringement claims. In so holding, reliance was placed on a case that was decided after Aetna's disclaimer and which was subsequently reversed by the Sixth Circuit. *See Advance Watch Co. v. Kemper National Ins. Co.,* 99 F.3d 795 (6th Cir.1996).

The purpose of this discussion is not to dispute the previous judge's decision on coverage. The fact that the judge had to go through definitional exercises to reach his conclusion merely confirms the fact that the coverage issues were "fairly debatable" at the time Aetna disclaimed coverage.

### CONCLUSION

In sum, Aetna has brought forth evidence that properly supports a motion for summary judgment. Taking all the facts into consideration, the coverage issues were "fairly debatable." Accordingly, Aetna's motion for summary judgment on Hudson's bad faith claim is hereby **GRANTED.** Hudson's bad faith claim is hereby **DISMISSED WITH PREJUDICE.**

### ORDER

This matter having come before the Court on the motion for summary judgment by defendant, Aetna Casualty & Surety Compa-

ny; and oral argument having been heard on October 14, 1997; and for the reasons stated more particularly in the accompanying Letter Opinion;

IT IS on this 12th day of December, 1997,

**ORDERED** that defendant's motion be and is hereby **GRANTED**; and it is

**FURTHER ORDERED** that plaintiff's bad faith claim be and hereby is **DISMISSED WITH PREJUDICE.**