

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-29-2000

# On Air Ent Corp v Nat'l Indemnity Co

Precedential or Non-Precedential:

Docket 98-2038 and 98-2039

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"On Air Ent Corp v Nat'l Indemnity Co" (2000). *2000 Decisions.* Paper 70.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/70

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 29, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 98-2038 & 98-2039

ON AIR ENTERTAINMENT CORP.;
NISE PRODUCTIONS, INC.; MICHAEL NISE,
Appellants at No. 98-2038

v.

NATIONAL INDEMNITY CO.
Appellant at No. 98-2039

APPEAL AND CROSS-APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil Action No. 96-cv-02597)
(District Judge: Ronald L. Buckwalter)

ARGUED: October 20, 1999

BEFORE: SCIRICA, COWEN, and MAGILL,* Circuit  Judges

(Opinion Filed March 29, 2000)

        Michael R. Needle, Esquire
          (ARGUED)
        Law Offices of Michael R. Needle
        2401 Pennsylvania Avenue
        Suite 1C-44
        Philadelphia, PA 19130
         Counsel for Appellants/Cross-
        Appellees

_____

* Honorable Frank Magill, Senior United States Circuit Judge for the
Eighth Circuit Court of Appeals, sitting by designation.



        Nancy F. Peters, Esquire (ARGUED)
        National Indemnity Company
        4016 Farnam Street
        Omaha, NE 68131

        Barry L. Kroll, Esquire
        Williams & Montgomery
        20 North Wacker Drive
        2100 Opera Building
        Chicago, IL 60606

Peggy B. Greenfeld, Esquire
Klett, Lieber, Rooney & Schorling
18th & Arch Streets
Two Logan Square, 12th Floor
Philadelphia, PA 19103
 Counsel for Appellee/Cross-
Appellant

OPINION OF THE COURT

MAGILL, Senior Circuit Judge.

This appeal raises issues concerning the extent of coverage provided by Owner's, Landlord's and Tenant's Liability (OL&T) insurance policies. The appeal arises out of a suit by On Air Entertainment Corp. (On Air) against National Indemnity Co. (National) in which On Air, under an OL&T policy from National, sought defense costs and damages for bad faith in connection with the defense of two lawsuits (Suit One and Suit Two).1 On Air appeals the District Court's grant of National's motion for judgment as a matter of law on its bad faith claims, the Court's denial of its request to amend its complaint to add a fraud claim, and the Court's ruling that a release that it signed was enforceable and barred its action against National for damages in connection with Suit Two. National cross-appeals the District Court's finding that coverage exists

_____

1. We refer generically to the lawsuits filed against On Air in order to protect the privacy of the alleged minor rape victims who brought the suits. See generally 18 U.S.C.A. S 3509.

2

under the OL&T policy for Suit One and also appeals the District Court's holding that New Jersey law applies to the coverage issues. We affirm all of the District Court's rulings from which On Air appeals and reverse the District Court's holding of coverage and attorneys' fees under the OL&T policy.

I. BACKGROUND

In 1988, On Air purchased a standard OL&T insurance policy (Policy) from National to insure its premises.2 On Air produced two syndicated television teen dance shows called Dancing on Air and Dance Party USA (Dance Shows) on its premises. Edward O'Neil (O'Neil) was one of the hosts of the Dance Shows. In 1987, directors of On Air met with O'Neil regarding his off-show conduct with minor females who appeared on the Dance Shows and instructed him to not

have any further involvement with underage females. Despite these warnings, O'Neil continued in a relationship with an underage female and was subsequently removed as a host of the Dance Shows. However, in 1989, On Air reinstated O'Neil as a host of the Dance Shows. Shortly after his reinstatement, O'Neil allegedly raped two minor females who were dancers on the Dance Shows. Both of the alleged rapes occurred on social occasions off On Air's premises.

In January 1991, Suit One was filed against On Air alleging that On Air's negligent hiring and supervision of O'Neil contributed to the alleged rape of one of the underage females. On Air tendered Suit One to National, but National initially denied coverage under the Policy for various reasons. In October 1991, Suit Two was filed against On Air and contained similar allegations of negligent hiring and supervision. After receiving notice of Suit Two, National determined that while there was no coverage for either suit, it would defend both suits under a

_____

2. The 1989 policy covered the period from December 31, 1988, to December 31, 1989. National first sold the OL&T insurance policy to On Air in 1985. The policy was renewed annually, the 1989 policy being the fourth renewal.

3

full and complete reservation of rights, pending a declaratory judgment action.

Shortly after National agreed to take over the defense of the suits, Suit Two was settled by On Air's private counsel for $30,000 and National agreed to contribute $13,500 in exchange for a complete release of On Air. In connection with the settlement, On Air released National from all claims arising from Suit Two, including claims for coverage and attorneys' fees.3 Suit One settled in April 1994, and National paid the alleged rape victim $101,000 in exchange for a complete release of On Air.

On March 29, 1996, On Air brought the current suit against National alleging bad faith in connection with Suit One and Suit Two and claiming that it was entitled to attorneys' fees in connection with the defense of the suits. The District Court denied National's motion for summary judgment on its claim that the Policy did not provide coverage for Suit One and Suit Two and ruled that New Jersey law applied to the coverage issues. On Air's suit was scheduled for a jury trial on September 30, 1997. Prior to trial, the District Court ruled that the Policy provided coverage to On Air for Suit One and Suit Two. The Court

proceeded to trial on the remaining issues of whether
National had acted in bad faith in connection with the
suits, and the amount of attorneys' fees owed to On Air by
National.

On the third day of trial, the District Court informed On
Air that it had not made a showing of bad faith by National.
The Court allowed On Air to proffer all of its remaining
evidence in order to make a showing of bad faith. Following
On Air's proffer, the District Court granted National's
motion for judgment as a matter of law on the bad faith
claims. The Court scheduled the remaining issue, the

_____

3. The Release provided, in relevant part:

> Further, this "Settlement Agreement" contemplates and extinguishes
> any claims which the "insureds" may have for expenses, interest,
> costs, punitive damages, and/or attorney's fees arising out of

claims

> made as a result of the occurrence. The "insureds" acknowledge that
> "National Indemnity" has made a good faith effort to resolve their
> demands for judgment under the subject policy.

4

amount of attorneys' fees to which On Air was entitled, for
trial in June 1998. Prior to the June 1998 trial, the District
Court granted National's motion claiming that On Air was
not entitled to any attorneys' fees in connection with Suit
Two because On Air had signed a release of any potential
claims.4 Following a bench trial on the issue of attorneys'
fees in connection with Suit One, the Court awarded On Air
$63,600.08 for attorneys' fees, plus interest accrued.
Subsequently, the District Court denied National's motion
for an order to vacate the judgment or for a new trial, and
this appeal and cross-appeal followed.

II. ANALYSIS

A. Choice of Law Issue

National cross-appeals the District Court's ruling that
New Jersey law controls the case and argues that
Pennsylvania law should control. Because this is a diversity
case, we apply the choice of law principles of Pennsylvania,
the forum state. See Klaxon Co. v. Stentor Elec. Mfg. Co.,
313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021 (1941). The
District Court applied Pennsylvania's choice of law test,
which it termed "a combination of the `most significant' test
and an `interest' analysis," and held that New Jersey, and
not Pennsylvania, law controls the case.

National contends that the District Court misapplied
Pennsylvania's choice of law test, and that Pennsylvania
law should control the case. However, before a choice of law
question arises, there must actually be a conflict between
the potentially applicable bodies of law. See Lucker Mfg. v.
Home Ins. Co., 23 F.3d 808, 813 (3d Cir. 1994); Williams v.
Stone, 109 F.3d 890, 893 (3d Cir. 1997). National admits
that it cannot point to any differences between
Pennsylvania and New Jersey law relevant to this case. In
addition, our own research has not identified any relevant
differences. Under these circumstances, there is no conflict

_____

4. On Air appeals the District Court's holding that the release was
enforceable. On Air's claim has no merit and the District Court's ruling
is affirmed without further discussion.

of law, and the court should avoid the choice of law
question. See Lucker, 23 F.3d at 813. The court can,
therefore, refer interchangeably to the laws of New Jersey
and Pennsylvania in discussing the law applicable to the
case. See id.

B. Coverage under the Policy

The District Court held that the Policy provided coverage
in this case, but did not give the reasons for its ruling.5 On
cross-appeal, National argues, among other things, that

_____

5. The relevant portions of the Policy state:

> The company will pay on behalf of the insured all sums which the
> insured shall become legally obligated to pay as damages because of
>
> A. bodily injury or
>
> B. property damage
>
> to which this insurance applies, caused by an occurrence and
> arising out of the ownership, maintenance, or use of the insured
> premises and all operations necessary or incidental thereto, and

the

> company shall have the right and duty to defend any suit against
> the insured seeking damages on account of such bodily injury or
> property damage, even if any of the allegations of the suit are
> groundless, false or fraudulent, and may make such investigation
> and settlement of any claim or suit as it deems expedient, . . .

"Occurrence" is defined in the Policy as:

An accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

"Insured premises" is defined in the Policy as:

(1) the premises designated in the declarations, (2) premises alienated by the named insured (other than premises constructed for sale by the named insured), if possession has been relinquished to others, and (3) premises as to which the named insured acquires ownership or control and reports his intention to insure such premises under this policy and no other within 30 days after such acquisition; and includes the ways immediately adjoining such premises on land.

"Operations" are defined in the policy as: Teen dance TV shows, r/a theaters, motion pictures or television studios (including 10 remotes).

there is no coverage in this case because the Policy is an OL&T policy, a limited form of insurance which does not provide coverage for off-premises injuries. Our review of the District Court's coverage ruling is plenary. See Carey v. Employers Mut. Cas. Co., 189 F.3d 414, 417 (3d Cir. 1999).

National argues that OL&T policies, in contrast to broader comprehensive general liability policies, do not cover off-premises injuries such as those in the present case. On Air counters that the underlying lawsuits alleged that its negligence in hiring and supervising O'Neil resulted in the alleged rapes of the plaintiffs. On Air claims that because hiring and supervising necessary personnel, including the host, is "necessary or incidental" to the Dance Shows, one of the "operations" conducted on the insured premises, the injuries alleged in the lawsuit therefore "aris[e] out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental thereto."

Neither the parties' briefs nor our research reveal a decision by either New Jersey or Pennsylvania courts on the coverage provided by OL&T policies for off-premises injuries. Therefore, it is appropriate for the court to consider other state court decisions, federal decisions, and the general weight and trend of authority. See Farmers Alliance Mut. Ins. Co. v. Salazar, 77 F.3d 1291, 1294-95 (10th Cir. 1996). In construing the policy language, we must keep in mind that it is well established that ambiguity in insurance contracts must be construed in favor of the insured. See Nationwide Mut. Fire Ins. Co. v. Pipher, 140 F.3d 222, 227 (3d Cir. 1998).

In construing the "operations necessary or incidental thereto" language in OL&T policies, one court has noted that "[n]umerous courts have addressed whether off-site injuries may be covered by such language in a premises liability policy, and there is a definite lack of consensus as to the correct result." Hartford Fire Ins. Co. v. Annapolis Bay Charters, Inc., 69 F.Supp.2d 756, 761-62 (D. Md. 1999) (citation omitted). The cases construing OL&T policies can be grouped into three general categories: (1) cases holding that OL&T policies only protect against liability arising from the condition or use of a building and

7

not liability arising from the nature of the operations or activity conducted therein;6 (2) cases holding that OL&T policies can cover liability arising from the nature of the operations or activity conducted therein if the injury occurs on the insured premises;7 and (3) cases holding that OL&T policies cover liability arising from accidents occurring off

_____

6. In the first category are cases such as Harvey v. Mr. Lynn's Inc., 416 So.2d 960 (La. Ct. App. 1982), where the court said that:

> The purpose of owners', landlords' and tenants' liability insurance is
> to protect against liability arising from the condition or use of a
> building. This must be distinguished from insurance against liability
> arising from the nature of the enterprise or activity conducted
> therein. Put another way, an OLT policy does not cover liability
> arising from the type of business activity which the insured
> conducts in the building.

Id. at 962 (citation omitted). Similarly, in American Empire Surplus Lines Ins. Co. v. Bay Area Cab Lease, Inc., 756 F.Supp. 1287 (N.D. Cal. 1991), the court said that:

> The policy issued to Cab. Co. is a Landlord's Owner's & Tenant's
> policy, and is limited by its terms to `accidents' occurring `on the
> premises.' The type of policy issued to Cab Co. is intended `simply
> to protect against liability arising from the condition or use of the
> building as a building [and] must be distinguished from insurance
> against liability arising from the nature of the enterprise or activity
> conducted therein.'

Id. at 1289 (quoting 11 Couch on Insurance Sd 44:379, at 551-552 (Rev.

ed. 1982 and supp. 1989)).

7. In the second category are cases such as Walthers v. Travelers Casualty and Surety Co., 1999 WL 793939 (D. Or. 1999), where the court held that the word "incidental" makes the OL&T provision extremely inclusive and that such a policy covers a corporation's negligence in hiring and supervision of a dentist and the making of dental appointments where the actions occurred on the insured premises. See id. at *5. See also Hartford Fire Ins. Co. v. Annapolis Bay Charters, Inc., 69 F.Supp.2d 756, 761 (D. Md. 1999) (holding that an OL&T policy which stated that the relevant premises were the "offices-general" and "hardware-retail" areas of a certain building offered some coverage for business operations related to general office or hardware-retail activities, but the specialized business operation of chartering watercraft to be used off-site, even though the chartering occurred on the insured premises, did not qualify as a "use .. . of the premises").

8

the insured premises if the injury has a sufficient nexus to the operations conducted on the insured premises. 8

Although we believe that OL&T policies should not be confused with more comprehensive general liability policies, there is no need for us to decide which category of cases we agree with because even if we were to hold that OL&T policies provide coverage for off-premises accidents, there would still be no coverage in this case. An OL&T policy requires a causal connection between the injury and the ownership, maintenance or use of the premises. See Paraclete, 857 F.Supp. at 835 (stating that a sufficient connection exists when there is a reasonable causal connection between the ownership, maintenance or use of the premises and the injury). Unlike the cases where courts have found accidents arising out of the operations of an insured to be covered,9 in our case the accidents did not

_____

8. In the third category of cases, courts have held that, in certain circumstances, off-premises accidents can be covered under OL&T policies. In Servants of the Paraclete, Inc. v. Great American Insurance Co., 857 F.Supp. 822 (D.N.M. 1994), the court said:

    if Great American intended its insured to understand that the policy

    only covered the physical condition of the Servants' facilities, it
    should have so stated. At a minimum, it should have omitted the
    language "and all operations necessary or incidental thereto . . ."
    and limited coverage to accidents arising out of the"ownership,
    maintenance or use of the insured premises . . . ." Any accident
    resulting solely from the physical condition of the facilities
would

> included within the more limited language. Great American's
> contention makes superfluous the language "and all operations
> necessary or incidental thereto . . . ."

Id. at 836. The court held that coverage may exist under an OL&T policy
for an off-premises accident if "there exists a sufficient connection
between the injury and the insured's premises, including necessary or
incidental operations on the premises." Id. ; see also Henry v. General
Cas. Co. of Wis., 593 N.W.2d 913 (Ct. App. Wis. 1999) (holding that an
off-premises automobile accident was covered under an OL&T policy
where an automobile dealership provided a "loaner" to a customer whose
car was being repaired at the auto dealership because the loan of the car
was incidental to the dealership's auto business).

9. In Paraclete, a nonprofit organization that treated a priest for
pedophilia was sued for negligence in the treatment of the priest when

"arise out of . . . operations necessary or incidental" to the
insured premises because the sexual assaults occurred on
purely social outings and, thus, do not have the requisite
causal connection to the insured premises.

A sufficient causal connection cannot exist where the
injury arose out of a social activity that had no connection
to the operations of the insured. This principle was
exhibited in Berne v. Continental Ins. Co., 753 F.2d 27 (3d
Cir. 1995), where Berne, the insured owner of Berne's Ice
Company, Inc., met with Joseph Flynn, the general
manager of the Sapphire Beach Hotel, at the Slipaway Bar
in St. Thomas, Virgin Islands. See id. at 28. The purpose of
the meeting was to discuss the Hotel's indebtedness to
Berne's Ice Company. See id. Berne, licensed to carry a
pistol, brought his pistol with him to the meeting. See id.
While awaiting his turn in a game of darts, Berne realized
that the pistol he was carrying was loaded and moved to an
adjacent corridor to unload the pistol. See id.  While he was
unloading the pistol, it accidently discharged and the bullet
passed through a wall and hit a customer of the bar. See
id. Berne contended that his OL&T policy provided coverage
because Berne carried the pistol in order to protect the
receipts of the ice business from robbery, and the pistol
was discharged during the course of a business meeting
with Flynn. See id. at 29. The insurer, naturally, contended
that the pistol was discharged after the business meeting
was over when Berne and Flynn were engaged in a purely
social game of darts. See id. The trial court found that the

---

the priest, during the course of his treatment, allegedly sexually abused
numerous parish children. See 857 F.Supp. at 826-27. The court found

that the requisite causal connection was satisfied because the alleged negligence occurred within the insured facilities, and because one of the missions of the insured was the rehabilitation of pedophiliac priests, the alleged negligence detailed activities which were at least an "incidental" use of the insured's premises. See id. at 837. In Henry, the loan of the vehicle was directly related to the repair of the accident victim's car, and,
thus, had a sufficient connection to the operations of the insured. See 593 N.W.2d at 918-19. Similarly, in Walthers, where the claim involved the insured's negligent employment and supervision of a dentist, the injuries occurred during the course of the dentist's duties. See 1999 WL 793939, at *1.

10

discharge of the pistol did not arise out of operations necessary or incidental to Berne's Ice Company's business. See id. The Third Circuit affirmed the district court's holding, saying that there was evidence that the business discussion between Berne and Flynn took only a few minutes and that Berne carried a pistol not only for business purposes, but also for personal reasons when not engaged in business. Id.; see also Reznichek v. Grall, 442 N.W.2d 545 (Wis. Ct. App. 1989) (a bowling alley proprietor's OL&T policy did not cover his negligent transmission of genital herpes to a sixteen-year-old girl as a result of sexual encounters that occurred on the bowling alley premises because there was no causal relationship between the plaintiff 's injury and the ownership, maintenance or use of the premises as a bowling alley).

Similarly, in our case there is not a sufficient connection between the underlying injuries and the use of the insured premises because the injuries arose out of purely social outings that were unconnected to any of the operations of On Air. In Suit One, the complaint alleged that O'Neil asked the minor plaintiff to go to the mall with him. On the pretext of going to the mall, O'Neil told the plaintiff that he had to stop at his grandmother's house to pick up something. Upon arrival at his grandmother's house, O'Neil enticed the plaintiff into his bedroom and forcibly assaulted and raped her. Suit One involves injuries that arose from purely social circumstances, and the injuries' connection to On Air's operations are not sufficient to support a holding that the injuries "arose out of . . . operations necessary or incidental" to the premises. The District Court'sfinding of coverage and attorneys' fees under the Policy must therefore be reversed.

C. Bad Faith Claims

On Air appeals the District Court's grant of judgment as a matter of law under Federal Rule of Civil Procedure 50(a)

on its bad faith claims against National. On October 3, 1997, the District Court, after having heard On Air's witnesses' testimony and reviewing its exhibits and proffers in support of its claims, orally directed that a judgment as a matter of law be entered in favor of National on On Air's

claims of bad faith in disclaiming coverage under the Policy and bad faith in the defense of Suit One and Suit Two as well as its claim for intentional infliction of emotional distress. On appeal, On Air argues that the District Court's ruling was erroneous. Our review of the District Court's grant of judgment as a matter of law is plenary. See Rego v. ARC Water Treatment Co. of Pa., 181 F.3d 396, 400 (3d Cir. 1999).

On Air's claims do not have any merit. Bad faith in denial of coverage only exists if the insured's claim is not "fairly debatable." See Robeson Indus. v. Hartford Accident & Indem., 178 F.3d 160, 169 (3d Cir. 1999) (applying New Jersey law).10 In order to prove that a claim is not "fairly debatable," "the insured must `show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim.' " Id. (quoting Pickett v. Lloyd's, 621 A.2d 445, 453 (N.J. 1993)). The coverage issue in this case was "fairly debatable." On Air cannot show the absence of a reasonable basis for denying coverage, and, thus, On Air cannot show that National acted in bad faith in denying coverage.11  Similarly, On Air has not shown that National acted in bad faith in defense

_____

10. Similar to New Jersey law, "[a] refusal, with no good cause, to provide

a defense or to indemnify when the policy provides for coverage violates Pennsylvania's bad faith insurance statute." Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 751 n.9 (3d Cir. 1999).

11. Courts construing New Jersey law have indicated that a finding of coverage under the insurance policy is a predicate to a bad faith claim. See Hudson Universal, Ltd. v. Aetna Ins. Co., 987 F.Supp. 337, 343 n.3 (D.N.J. 1997). On Air claims that even if there is no coverage under the OL&T policy, National denied coverage in bad faith because, at the time that it denied coverage, it based its decision on"occurrence" grounds contradicted by known case law and the advice of its counsel. However, courts have held that what is dispositive is whether, based on the facts existing at the time of the denial, a reasonable insurer would have denied the claim, so that even if the insurer gives an erroneous reason for denying coverage, if there is a valid basis for denying coverage, the insurer is not liable for bad faith. See Republic Ins. Co. v. Stoker, 903

S.W.2d 338, 340-41 (Tex. 1995).

12

of Suit One and Suit Two and we affirm the District Court's
dismissal of both claims under Rule 50(a).12

III. CONCLUSION

In sum, we affirm the District Court's rulings from which
On Air appeals, and reverse the District Court's holding of
coverage and attorneys' fees under the OL&T policy.

A True Copy:
Teste:

     Clerk of the United States Court of Appeals
     for the Third Circuit

---

12. On Air's other claims on appeal, that it is entitled to emotional
distress and punitive damages in connection with the bad faith claims,
and that it should have been allowed to amend its complaint to allege
fraud are without merit and warrant no discussion. The District Court's
rulings on those issues are affirmed.

13