Kenneth TARSIO, Plaintiff,

v.

The PROVIDENT INSURANCE COMPANY, et al., Defendants.

No. Civ.A.98–1894.

United States District Court, D. New Jersey.

Aug. 7, 2000.

Louis J. Santore, Charles F. Kenny, Santore & Kenny, Secaucus, NJ, for plaintiff.

John B. Gaffney, Wright, Pindulic & Hamelsky, Paramus, NJ, for defendant Provident.

## OPINION

WOLIN, District Judge.

This matter is before the Court on defendant's motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. This case involves the denial of insurance coverage by defendant, Provident Life Insurance Company ("Provident"), in connection with a claim submitted by plaintiff, Kenneth Tarsio ("plaintiff"). The narrow question before the Court is whether defendant exercised "bad faith" in its denial of coverage. The Court has considered the matter, on the papers, pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons stated below, the Court will grant defendant's motion.

## BACKGROUND

For many years, plaintiff worked as president of Rocco Caruso, Inc. ("Rocco Caruso"), formerly his father's construction company. As president, he managed the day-to-day operations of the company. His duties included, *inter alia*, bidding, soliciting, negotiating new contract, supervising existing projects, planning work crews, and financial decisions.

While at Rocco Caruso, plaintiff purchased two separate disability insurance policies from defendant.[1] Together, the two policies provided defendant with over $7000 in monthly benefits so long as plaintiff could not "perform the substantial and material duties of his occupation" due to injury or sickness.[2]

In June 1996, plaintiff claims he became depressed. He maintains that he could not "concentrate, function or speak with customers." He further maintains that he "had difficulty leaving the house, did not care whether he lived or died, and became visibly emotional (crying and upset) at the slightest problems." By August 1996, plaintiff states he could no longer work due to the depression. At that point, he asserts "he was unable to make decisions

---

1. In May 1986, plaintiff purchased his first disability insurance policy from Provident. He purchased the second policy in March 1990.

2. The policies provide that Provident will pay plaintiff if, due to injury or sickness: (1) plaintiff is unable to perform the substantial and material duties of his occupation, and (2) plaintiff is under the care and attendance of a physician.

and was constantly breaking down emotionally." Because he no longer worked, his employee, Nick Russo ("Russo"), began making the business decisions. At about the same time, Rocco Caruso went out of business. Plaintiff claims that Russo suggested to plaintiff that he close the business due to plaintiff's depression.[3]

In the beginning of August, Dr. Maggiano, plaintiff's family doctor, diagnosed plaintiff with anxiety and prescribed Xanax. At the end of August, Dr. Beverly Dunn, who several years earlier treated plaintiff for depression, again treated plaintiff. She diagnosed him with major depression and prescribed Prozac. In addition, plaintiff also visited a psychotherapist, Susan Kilduff, once a week. Ms. Kilduff also diagnosed plaintiff with depression. Both Dr. Dunn and Ms. Kilduff concluded that plaintiff should not return to his present job.

In November 1996, plaintiff submitted a claim for disability benefits. Thereafter, Provident commenced an evaluation of his claim. On January 15, 1997, Provident informed plaintiff that, although it did not have a complete file for a full evaluation, it would pay him benefits and reserved their rights pending a complete evaluation.

Several months later, Provident completed its evaluation and denied plaintiff's claim. In coming to this decision, Provident states it reviewed all available relevant material. Specifically, Provident states it reviewed questionnaires completed by Ms. Kilduff and Dr. Dunn. Provident points out that, in the questionnaire, Ms. Kilduff indicated plaintiff responded well to medication and could return to "work" within six months to a year.[4]

In June 1997, Provident referred plaintiff to a psychiatrist, Dr. David J. Gallina, and a psychologist, Dr. Nancy Burleigh Gallina, for independent examinations. Dr. David Gallina found that plaintiff responded well to medication and his depression was in remission. Further, he suggested that plaintiff may have skewed some of psychological testing by exaggeration and "deliberate distortion of the clinical picture...." Such "distortion," according to the doctor, suggested "the possibility of malingering." From his examination, the doctor concluded that plaintiff could "function in some capacity in the construction business, though perhaps not in the same capacity he formerly had in running his own corporation."

Similarly, after her examination of plaintiff, Dr. Nancy Gallina found plaintiff may have "exaggerated" his responses to testing. Therefore, she suggested that his "profile should be interpreted with caution." Dr. Nancy Gallina, thus, concluded: "It is my opinion, with reasonable certainty, that there is considerable subjective embellishment and exaggeration of symptoms by [plaintiff]. These are probably reflective of incentives to a disability lifestyle which includes work avoidance and disability income."

After its review of this information, Provident denied plaintiff's claim. Provident maintains that it denied the claim "in view of the exaggeration and malingering found in the independent medical exam, in view of the finding that [p]laintiff could return to work, and in view of the improving condition as noted by plaintiff's own attending physician."

After Provident denied the claim, plaintiff's attorney sent Provident a report from Dr. Sheldon Weiser. In his report, Dr. Weiser stated that plaintiff should remain on disability due to his depression and personality disturbance. Provident forwarded the report to Dr. David Gallina and Dr. Nancy Gallina for their review and response. Both found that Dr. Weiser's report did not alter their opinions. Conse-

---

3. Provident argues that Rocco Caruso closed due to reasons other than plaintiff's depression.

4. Ms. Kilduff did not specify what type of "work" plaintiff could perform.

quently, Provident did not change its determination.

After the denial, plaintiff filed a two-count complaint. In count one, plaintiff alleges that Provident failed to pay benefits to plaintiff under terms of his disability insurance policies. In count two, plaintiff alleges that Provident "failed and refused in bad faith, and without reasonable cause, to pay plaintiff's claim under the terms of the policy." Provident now moves for summary judgment as to count two.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir.1986). In making this determination, a court must draw all reasonable inferences in favor of the non-movant. *See Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. dismissed*, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). Whether a fact is "material" is determined by the substantive law defining the claims. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *United States v. 225 Cartons*, 871 F.2d 409, 419 (3d Cir.1989).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. Summary judgment must be granted if no reasonable trier of fact could find for the non-moving party. *See id.* Conversely, if a reasonable trier of fact could find for the non-moving party, the Court must deny summary judgment. *See id.*

When the non-moving party bears the burden of proof at trial, the moving party's burden can be "discharged by 'showing'— that is, pointing out to the District Court— that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party has carried its burden of establishing the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). When the non-moving party's evidence in opposition to a properly-supported motion for summary judgment is merely "colorable" or "not significantly probative," the Court may grant summary judgment. *See Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505.

Further, when a non-moving party who bears the burden of proof at trial has failed, in opposition to a motion for summary judgment, to raise a disputed fact issue as to any essential element of his or her claim, summary judgment should be granted because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548.

### II. Bad Faith

The New Jersey Supreme Court has recognized a cause of action for an insurance company's "bad faith" failure to pay an insured's claim. *See Pickett v. Lloyd's*, 131 N.J. 457, 470, 621 A.2d 445 (1993). The *Pickett* court established a test for determining "bad faith." First, "a plaintiff must show the absence of a reasonable basis for denying benefits of the policy." *Id.* at 473, 621 A.2d 445 (quotations and citation omitted). If a plaintiff demonstrates the absence of a reasonable basis, he must then prove that the defendant knew or recklessly disregarded the

lack of a reasonable basis for denying the claim. *See id.*

■ . The *Pickett* court clarified this test, explaining that an insurance company does not act in "bad faith" if the plaintiff's insurance claim was "fairly debatable." The New Jersey Supreme Court has prescribed a somewhat peculiar method to determine whether a claim was "fairly debatable."

> Under the "fairly debatable" standard, a claimant who could not have established as a matter of law a right to summary judgment on the substantive claim would not be entitled to assert a claim for an insurer's bad faith refusal to pay the claim.

*Id.* at 473, 621 A.2d 445; *see also Hudson Universal, Ltd. v. Aetna Ins. Co.*, 987 F.Supp. 337, 341 (D.N.J.1997) (following *Pickett* in holding that "an insurer's disclaimer of coverage cannot be held to be in bad faith unless the insured is granted summary judgment on the issue of coverage").

Thus, under the New Jersey Supreme Court's "fairly debatable" standard, the Court must first ascertain whether plaintiff could have established a right to summary judgment as to the underlying claim—plaintiff's first cause of action. If factual issues exist as to the underlying claim (i.e., questions of fact as to whether plaintiff is entitled to insurance benefits—plaintiff's first cause of action), the Court must dismiss plaintiff's second cause of action—the "bad faith" claim.[5] *See id.; see also Hudson Universal, Ltd.*, 987 F.Supp. at 341 (following *Pickett* in finding that a court must dismiss a plaintiff's "bad faith" claim where a question of fact (or law) is present as to the underlying claim); *Polizzi Meats, Inc. v. Aetna Life & Cas. Co.*, 931 F.Supp. 328, 334–35, 339–41 (D.N.J.1996) (agreeing with the defendant that "if there are genuine issues of materi-

al fact regarding coverage which would preclude summary judgment in favor of the insured, then the insurer cannot be held liable in bad faith ...."). The Court must do so because, according to the New Jersey Supreme Court, a question of fact permits an insurer to "fairly debate" an insured's claim. *See Pickett*, 131 N.J. at 473–74, 621 A.2d 445 In sum, the Court must rule, as a matter of law, as to an insured's bad faith claim, if it finds genuine issues of material fact precluding summary judgment as to the underlying claim.

The Court points out that it can envision other valid methods of determining "bad faith" and considers the New Jersey Supreme Court's rule somewhat anomalous. Indeed, such a rule is odd in that it requires the Court to examine a cause of action (plaintiff's first cause of action) which is not the subject of the instant motion. Moreover, and more significantly, the jury may ultimately reject the insurer's evidence and find that the insurer possessed no basis to reject plaintiff's claim. Certainly, after rejecting such evidence, other evidence may suggest that the insurer acted in "bad faith." Yet, the jury is precluded from deliberating "bad faith" simply because a court finds issues of fact as to the underlying claim.

Although the Court doubts the wisdom of this standard, the New Jersey Supreme Court has spoken. It has acknowledged and rejected other methods for determining "bad faith" implemented in other jurisdictions. *Pickett*, 131 N.J. at 472–73, 621 A.2d 445. Of course, this Court, as a federal court sitting in diversity, must apply the substantive law of New Jersey as determined by the state's highest court. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The Court must, therefore, apply New Jersey's "fairly debatable" standard and examine whether plaintiff could "have es-

---

**5.** If, however, a court finds that a plaintiff would be entitled to summary judgment, the bad faith claim does not necessarily prevail. At that point, the court must engage in further

analysis. *See Hudson Universal, Ltd.*, 987 F.Supp. at 342; *Polizzi Meats Inc. v. Aetna Life & Cas. Co.*, 931 F.Supp. 328, 334–35, 339–41 (D.N.J.1996).

tablished as a matter of law a right to summary judgment on [plaintiff's first cause of action]." *Pickett,* 131 N.J. at 473, 621 A.2d 445.[6]

■ In the instant case, Provident raises genuine issues of fact as to plaintiff's underlying claim. Therefore, the Court must dismiss plaintiff's "bad faith claim."

Indeed, Provident purportedly relied upon the reports of Dr. David Gallina and Dr. Nancy Gallina in denying plaintiff's claim. Those reports cast doubt upon plaintiff's veracity, suggesting that plaintiff "exaggerated" his depression for the purpose of obtaining insurance benefits. Provident also proffers evidence that it relied on medical reports indicating that plaintiff responded well to medication, his condition improved, and he "could return to work." From this evidence, Provident argues that it satisfies the "fairly debatable" standard.

The Court is compelled to agree. Such evidence would preclude summary judgment as to the underlying claim. Indeed, if the jury believes the reports concerning plaintiff's veracity, they may reasonably conclude that plaintiff is, in fact, not disabled. Moreover, Provident's evidence pertaining to mental improvement and an imminent return to work suggest a condition inconsistent with the alleged disability. While the Court acknowledges that Dr. David Gallina found that plaintiff may be unable to return to his prior job, the doctor noted that plaintiff's "exaggeration"[7] may have skewed some test results. He also found indications of "malingering." Viewing the evidence in its totality, a reasonable juror could find that defendant reasonably denied plaintiff benefits. Hence, because Provident has demonstrated a question of fact as to the underlying claim, Provident has satisfied the "fairly debatable" standard. *Pickett,* 131 N.J. at 473–74, 621 A.2d 445. Accordingly, the Court must grant Provident's motion for partial summary judgment as to plaintiff's "bad faith" claim.[8]

## CONCLUSION

For the above stated reasons, the Court will grant defendant's motion for partial summary judgment as to count two. Therefore, the Court will dismiss count two with prejudice. An appropriate Order is attached.

## *ORDER*

In accordance with the Court's Opinion filed herewith,

It is on this 7th day of August 2000,

ORDERED that defendant's motion for partial summary judgment as to count two is granted and count two is dismissed with prejudice.

---

6.  *See also Polizzi Meats, Inc.* at 334–35 ("An insurer should have the right to litigate a claim when it feels there is a question of law or fact which needs to be decided before it in good faith is required to pay the claimant." (citations and quotations omitted)).

7.  Plaintiff argues that the doctor improperly found that plaintiff exaggerated. Plaintiff, however, merely raises a disputed factual issue as to the underlying claim—whether he was entitled to insurance benefits. Such an argument does not implicate the "bad faith" claim; Provident would have no reason to know that the medical reports were faulty incorrect.

8.  Provident also moves the Court to rule, as a matter of law, that plaintiff may not recover punitive damages as to Count two. Because the Court will dismiss count two, this point is moot.